# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DAN LA BOTZ, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-997 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| FEDERAL ELECTION COMMISSION, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE FEC'S MOTION TO DISMISS

## I.  INTRODUCTION

Dan La Botz was a member of Ohio's Socialist Party who unsuccessfully ran for the U.S. Senate in 2010.  La Botz claims that the Ohio News Organization ("ONO") unfairly excluded him from a series of sponsored televised debates held in the month preceding the election.  He filed an administrative complaint with the Federal Election Commission ("FEC"), alleging that his exclusion from the debates violated the Federal Election Campaign Act ("FECA").  The FEC dismissed his complaint on prosecutorial discretion grounds, and La Botz brought suit, alleging that the FEC's action was contrary to law.  Now before the Court is the FEC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Given that La Botz has recently relocated to New York and has no foreseeable plans to run for the Senate again in Ohio, his case is now moot, and the Court lacks jurisdiction to proceed.  Moreover, because the FEC is afforded broad prosecutorial discretion, its dismissal of La Botz's complaint is not contrary to law, and therefore, La Botz's case must be dismissed on the merits regardless of jurisdiction.

## II. BACKGROUND

### A. Legal Framework

The FECA prohibits corporations from making financial contributions in connection with any federal election. 2 U.S.C. § 441b(a) (2002). The FECA does, however, allow corporations to make expenditures in furtherance of "nonpartisan activit[ies] designed to encourage individuals to vote," such as televised debates. *Id*. § 431(9)(B)(ii); *see La Botz v. FEC*, 889 F. Supp. 2d 51, 54 (D.D.C. 2012) (explaining that the FECA "allows corporations to defray the costs of nonpartisan televised debates") (citing *Hagelin v. FEC*, 411 F.3d 237, 238 (D.C. Cir. 2005)). Corporations providing financial assistance to debate staging organizations must satisfy several criteria to ensure the debates remain nonpartisan. 11 C.F.R. § 114.4(f). Specifically, FEC regulations require staging organizations to be non-profit organizations that do not "endorse, support, or oppose political candidates or political parties," *id*. § 110.13(a)(1), and the debates may not be structured "to promote or advance one candidate over another," *id*. §110.13(b)(2). Additionally, staging organizations must employ "pre-established objective criteria to determine which candidates may participate in a debate." *Id*. § 110.13(c).

Any person believing a violation of the FECA has occurred may file an administrative complaint with the FEC. 2 U.S.C. § 437g(a)(1). Upon receipt of the complaint, there are several steps the FEC will then take. *See generally* 2 U.S.C. § 437g(a)(2)–(6). If the FEC determines "that it has reason to believe that a person has committed . . . a violation of the [FECA] . . ." the FEC will notify that person, and then "make an investigation of the alleged violation." *See* 2 U.S.C. § 437g(a)(2). If the FEC concludes no violation has occurred, it may dismiss the complaint. *See La Botz*, 889 F. Supp. 2d at 55 (citing 2 U.S.C. § 437g(a)(8)(A)); *see also*

*Hagelin*, 411 F.3d at 239. A party whose complaint has been dismissed may file a civil action in this court challenging the validity of the FEC's decision. 2 U.S.C. § 437g(a)(8)(A).

## B. Factual Allegations and Procedural History

On September 1, 2010, the ONO, a consortium of eight Ohio newspapers, announced it was sponsoring a series of televised debates between the Democratic and Republican candidates for Ohio's U.S. Senate seat. AR005. La Botz was excluded from the debates. AR011. He alleges he received no prior notice when the debates were to take place, nor given the opportunity to achieve the criteria required for participation. *Id*. On September 21, 2010, La Botz filed an administrative complaint with the FEC alleging that the ONO violated federal regulations by not relying on "pre-established objective criteria" in selecting the debate participants. AR003, AR011.

### 1. MUR 6383

Upon receiving the Plaintiff's administrative complaint (MUR 6383), the FEC solicited responses from the ONO, the eight newspaper organizations, as well as the Republican and Democratic campaigns' respective committees and treasurers. AR055–60. The FEC's general counsel reviewed the administrative complaint and issued a report concluding that the ONO employed pre-existing objective criteria in compliance with 11 C.F.R. § 110.13(c). AR119. Accordingly, the report concluded that there was "no reason to believe" the ONO had violated the FECA. AR120. In accordance with this report, the FEC commissioners dismissed La Botz's complaint. AR123.

### 2. *La Botz I*

On July 8, 2011, La Botz filed a court complaint alleging that the FEC's dismissal of his administrative complaint was contrary to law. *See* Compl., *La Botz v. FEC*, No. 11-1247

(D.D.C. 2011), ECF No. 1.  The FEC filed a motion to dismiss, and this Court denied that motion and remanded the matter to the agency.  *La Botz*, 889 F. Supp. 2d at 64.  This Court found that it had jurisdiction to hear the Plaintiff's claim under the "capable of repetition, yet evading review" exception to the mootness doctrine because La Botz would likely "run for federal office in Ohio again in the future." *Id*. at 59 (internal quotation marks omitted).  On the merits, this Court also held that the FEC's dismissal of La Botz's complaint was contrary to law, because its determination that the ONO used pre-existing criteria to select debate participants was not based on "substantial evidence." *Id*. at 62.  The Court noted that "its holding only applies to the FEC's determination that the ONO used *pre-existing* criteria," (emphasis added) and that it had "no quarrel with FEC's" determination that the criteria the ONO used had been *objective*. *Id.* at 63 (emphasis added).  The Court finally noted that "it seems possible that the FEC's decision to dismiss La Botz's administrative complaint could have been justified entirely by the FEC's prosecutorial discretion, which is 'considerable.'" *Id.* at 63 n.6 (citing *Nader v. FEC*, 823 F. Supp. 2d 53, 65 (D.D.C. 2011)).

### 3.  MUR 6383 On Remand

On remand, given the absence of substantial evidence in the record, the FEC decided that further investigation was necessary to conclusively determine whether the ONO had, in fact, employed pre-established objective criteria in choosing participants in advance of the 2010 debates.  AR194–197.  After concluding that pursuing an extensive investigation into the ONO's debate planning process would be an inefficient use of the Commission's limited resources, the Commission exercised its prosecutorial discretion and dismissed the matter.  AR185, AR197–198.  La Botz once again brought suit in this Court, alleging that the FEC's decision was contrary to law.  Pending before the Court is the FEC's motion to dismiss, both for lack of

4

subject matter jurisdiction and for failure to state a claim. *See* Def.'s Mot. Dismiss, ECF No. 12. For the reasons that follow, the Court will grant the FEC's motion to dismiss on both grounds.

### III. ANALYSIS

#### A. Legal Standards

1. Motion to Dismiss for Lack of Subject Matter Jurisdiction (12(b)(1))

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. E.P.A.*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required for a 12(b)(6) motion for failure to state a claim. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *See Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The D.C. Circuit has explained that a motion to dismiss for lack of standing constitutes a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.

Cir. 1987). Likewise, "[m]otions to dismiss on grounds of mootness are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 27 (D.D.C. 2006); *Toxco, Inc. v. Chu*, 801 F. Supp. 2d 1, 5 (D.D.C. 2011) ("Under Rule 12(b)(1), a party may move to dismiss a case on grounds of mootness.") (citing *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744–45 (D.C. Cir. 1991)); *see also Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 321 (D.C. Cir. 2009) (reviewing *de novo* district court's dismissal of case on mootness grounds under Federal Rule of Civil Procedure 12(b)(1)).

2. Motion to Dismiss for Failure to State a Claim (12(b)(6))

The defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), but given that this case requires the Court to review agency action, the traditional Rule 12(b)(6) standard of review does not apply. Rather, when agency action is challenged, "[t]he entire case on review is a question of law and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Accordingly, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

\*     \*     \*

The FEC first argues that the Court should dismiss this case for lack of subject matter jurisdiction, as the Plaintiff no longer has standing and this case is now moot. *See* Def.'s Mot. 11–13. In the alternative, the FEC contends that La Botz's case should be dismissed for failure to state a claim because the FEC's use of prosecutorial discretion was reasonable and subject to deference. *Id*. at 15–20. The Court analyzes both issues in turn.

### B. The Court Lacks Jurisdiction to Decide La Botz's Claim

The FEC first argues that given La Botz's recent relocation to New York, the Court lacks Article III jurisdiction to hear La Botz's claim. *Id.* at 11. In response, La Botz argues that he has continuing Article III standing, and further, that he falls under the "capable of repetition, yet evading review" exception to the mootness doctrine. *See* Pl.'s Opp'n Mot. 16–21, ECF No. 13. Because the parties make arguments regarding both standing and mootness, the Court addresses both of these jurisdictional doctrines, ultimately agreeing with the FEC as to each.

#### 1. Standing

To meet the constitutional requirements of standing, a plaintiff must show: (1) he has suffered an "injury in fact," which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and conduct at issue that is fairly traceable to the defendant; and (3) it is likely, not merely speculative, the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. Whether a plaintiff has standing is determined at the time the suit commences. *Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 324 (D.C. Cir. 2009). Thus, standing in the present action is ascertained from the facts as they existed when La Botz first filed his complaint in this Court in 2013. *See Natural Law Party of the U.S. v. FEC*, 111 F. Supp. 2d 33, 40 (D.D.C. 2000); *see also Lujan*, 504 U.S. at 570 n.4 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (citation omitted).[1]

---

[1] The Court in *La Botz I* explained that "standing must be ascertained from the facts as they existed when La Botz first filed his administrative complaint with the FEC in September 2010." 889 F. Supp. 2d 51, 56 (D.D.C. 2012). When La Botz filed his first complaint in 2011, he had represented to the Court that he would run again for federal office in Ohio. *Id.* at 59. Thus, regardless of whether standing was ascertained based on facts in September 2010, or July 2011, when La Botz filed his first complaint in federal court, the outcome in *La Botz I* was the same—he would likely run again for office in Ohio. Here, however, the facts as they existed in

Here, La Botz did not have standing when he filed his complaint in 2013; though he satisfies the injury and causation requirements of standing, his injury is no longer redressable. As the Court explained in *La Botz I*, La Botz's alleged injury, that he was unfairly excluded from the ONO's Senatorial debates, *see* AR011–13, suffices for purposes of standing if his exclusion violated the FECA. *See Buchanan v. FEC*, 112 F. Supp. 2d 58, 66 (D.D.C. 2000) (finding an unfair exclusion from a presidential debate, in violation of the FECA, constituted an injury in fact for purposes of standing); *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005) (explaining that courts routinely recognize that candidates forced to compete in illegally structured competitive (*i.e.*, campaign) environments have suffered an Article III injury); *accord Herron for Congress v. FEC*, 903 F. Supp. 2d 9, 16 (D.D.C. 2012). The second element of standing, causation, is also present in this case. By alleging that the FEC's failure to enforce the laws it was tasked with administering caused his injury, La Botz has satisfied the causation requirement. *La Botz*, 889 F. Supp. 2d at 56.

La Botz's standing problem, however, is with redressability. The FEC argues that under *Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013), La Botz lacks standing because, given recent developments, there is now virtually no possibility that any decision by this Court could redress his injury. Def.'s Mot. 14. In *Nader*, the court found that a presidential candidate could not establish redressability because it was too speculative at the time he filed suit that he would run again for President, thus making the chances of him being subjected to the same alleged violations in a subsequent campaign too hypothetical. *Id.* at 229. Like *Nader*, La Botz's 2013 statements that "[i]t is likely" that he will run for office, do not suffice to establish a redressable

---

2013, when La Botz filed his second complaint in federal court, are different from the facts that existed when La Botz filed his administrative complaint in September 2010. Given this change, the Court must base standing in this second action on the facts as they existed when the second complaint was filed in 2013.

injury for purposes of standing, because La Botz will no longer be running for office *in Ohio*, as he has relocated to New York. *Compare* La Botz Decl. 2013 ¶¶ 6, 8–9, ECF No. 13-1 (explaining that he is "relocating to New York in January of 2014 where I will be domiciled for the immediate future," and that "[i]t is likely that I will run for federal office in the future") *with* La Botz Decl. 2011 ¶ 7, *La Botz v. FEC*, No. 11-1247, ECF No. 13-1 ("I am considering running for office again, either for United States Senate *in Ohio or for some other federal office as a candidate of the Socialist Party of Ohio.*") (emphasis added). Given that he will not be running for office again in Ohio, a favorable decision by this Court will not redress his injuries, as the ONO's selection criteria will no longer affect his campaigning. *See Nader*, 725 F.3d at 228 (explaining that "a favorable decision here will not redress the injuries he claims" because Nader did not allege or show that he would be participating in an upcoming Presidential election); *Natural Law Party*, 111 F. Supp. 2d at 50 ("[P]laintiffs' injury can still be redressed by an FEC determination that the 1996 debate selection criteria was unlawful, *because as long as plaintiffs run for office, they will continue to be subjected to debate selection criteria.*") (emphasis added). La Botz therefore lacks standing, and his case must accordingly be dismissed.

### 2. Mootness

Even if La Botz could satisfy the requirements for standing, the judicial doctrine of mootness would nevertheless prevent this Court from having Article III jurisdiction over his claims. Courts must ensure that jurisdiction continues to exist throughout all stages of the litigation. *La Botz*, 889 F. Supp. 2d at 57; *Davis v. FEC*, 554 U.S. 724, 732–33 (2008) ("To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted); *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 461–62 (2007) ("Article III's 'case-or-controversy requirement

subsists through all stages of federal judicial proceedings . . . [I]t is not enough that a dispute was very much alive when suit was filed.'") (citations omitted).  As noted previously by this Court, the mootness doctrine is a logical corollary to the case-or-controversy requirement: if subsequent events have made it impossible for the court to grant effectual relief to the complaining party, "'any opinion as to the legality of the challenged action would be advisory.'" *La Botz*, 889 F. Supp. 2d at 58 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Given the unique circumstances surrounding most electoral controversies, it is very rare for these claims to be fully litigated prior to election day.  *Herron for Congress*, 903 F. Supp. 2d at 14;  *see also Johnson v. FCC*, 829 F.2d 157, 166 n. 7 (D.C. Cir. 1987) (explaining that issues presented in a debate rules challenge would persist in future elections but could not be resolved within the time frame prior to elections).  Thus, many potentially meritorious claims in election cases would routinely become moot as a matter of course.  However, courts have consistently applied an exception to the mootness doctrine in cases where challenged practices are "capable of repetition, yet evading review."  *See FEC v. Wis. Right to Life*, 551 U.S. at 462 (noting that election law challenges against the FEC "fit comfortably within the established exception to mootness for disputes capable of repetition, yet evading review"); *Davis*, 554 U.S. at 735 (same); *Shays v. FEC*, 424 F. Supp. 2d 100, 111 (D.D.C. 2006) (concluding challenge to presidential debate rules after election was over is appropriately analyzed under "capable of repetition, yet evading review" doctrine).  This Court previously held that the Plaintiff's claim fit within this exception, *see La Botz*, 889 F. Supp. 2d at 58, but given subsequent developments, La Botz's claim no longer warrants this treatment and is now moot.

To invoke this exception, a party must show that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a

reasonable expectation that the same complaining party will be subject to the same action again." *E.g.*, *Wis. Right to Life*, 551 U.S. at 462 (citation omitted). Regarding the first prong, as discussed above, electoral disputes can rarely be resolved through litigation prior to the challenged action's expiration. *See Herron for Congress*, 903 F. Supp. 2d at 14; *Johnson*, 829 F.2d at 166 n.7. Thus, "[e]lectoral disputes are . . . 'paradigmatic' examples of cases that cannot be fully litigated before the particular controversy expires." *La Botz*, 889 F. Supp. 2d at 59 (citing *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009)). Thus, La Botz's challenge is clearly one that evades review under the first prong of the analysis.

The second prong requires that there be a reasonable expectation that the "same complaining party will be subject to the same action again." *E.g.*, *Wis. Right to Life*, 551 U.S. at 462. Determining the scope of the term "same complaining party" has proved problematic for courts and has led to inconsistent application of the exception in federal courts. *See Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001) (noting discrepancy in whether courts require *same complaining party* or only *similarly situated party* for second prong of "capable of repetition, yet evading review" test) (emphasis added), *La Botz v. FEC*, 889 F. Supp. 2d 51, 59 (D.D.C. 2012) (same). In the electoral context, the Supreme Court has suggested that the capable of repetition, yet evading review doctrine is appropriately applied where the state statute or policy in question will be applied in future elections and thus cause a comparable harm to candidates in the future. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974).

The Court did not have occasion to adopt a particular approach in *La Botz I*, because it found that La Botz himself could be subjected to the same challenged action again. *La Botz*, 889 F. Supp. 2d at 59 ("[T]his [C]ourt need not reconcile any putative discrepancy in the case law to resolve this case."). The Court simply noted that some courts only require the plaintiff to show

11

"*others similarly situated*" might suffer comparable harm in the future. *See id*. (emphasis in original) (citing *Storer*, 415 U.S. at 737 n.8).

Again, this Court need not decide which approach is best—requiring the *same party* or *others similarly situated*—because either way, La Botz's injury is not capable of repetition yet evading review. Even if this Court were to adopt the laxer, similarly situated standard, because the ONO has implemented new written debate participant criteria, the chance of even a similarly situated party being subjected to the same precise FECA violation in the future—the lack of pre-existing, objective criteria—is slight. First, the ONO's criteria are now pre-existing and in written form, so there is no chance that a candidate—including Scott Rupert, the Plaintiff's example—will be subjected to purportedly post-hoc rationales by the ONO. *See* AR154–56 (outlining the ONO's newly proffered "evidence of electoral support" criteria (in addition to showing at least 10% success in Ohio state polls from March thru September 2012): (1) raising at least $500,000 in financial support; (2) being the nominee of a major party; *or* (3) receiving in excess of 10% of the general election vote preceding the Senatorial vote) (emphasis in original). Second, although this Court need not decide the substantive issue, it notes that other courts, including this one, have already concluded that, generally, the criteria relied upon by the ONO, such as polling data and financial support, are objective for purposes of 11 C.F.R. § 110.13(c). *See Buchanan v. FEC*, 112 F. Supp. 2d 58, 74 (D.D.C. 2000) (concluding that the use of a 15% polling threshold requirement was a sufficiently objective criterion); *La Botz*, 889 F. Supp. 2d at 63–64 (finding that consideration of financial support is an objective measure of a candidate's viability). Thus, the Plaintiff has not demonstrated "a reasonable expectation or a demonstrated probability" that a similarly situated party will be subjected to the same action—the lack of pre-

existing, objective criteria by the ONO—to warrant invoking this exception to mootness. *See Herron for Congress v. FEC*, 903 F. Supp. 2d 9, 14 (D.D.C. 2012) (citations omitted).

And as for La Botz himself, he has not shown that he will ever be the same complaining party again alleging the same FECA violation. In *La Botz I*, this Court found that the Plaintiff fell within the "capable of repetition, yet evading review" exception because it was "likely that he [would] run for federal office in Ohio again in the future." *Id*. at 59. However, that is no longer the case. La Botz has now relocated to New York "for the immediate future," *see* La Botz Decl. ¶ 6, and although he remains committed to running for federal office again in the future, *see* La Botz Decl. ¶¶ 6, 8, it is no longer likely that he will run for Senate again *in Ohio*.[2] Thus, La Botz has failed to carry his burden of showing that there is a "reasonable expectation" that he will be subjected to the ONO's alleged unfair debate practices again in the future.[3] *Herron for Congress*, 903 F. Supp. 2d at 14 (holding that the plaintiff must "demonstrate a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party'") (citation omitted). Accordingly, the Court finds that under either the "same complaining party" or the "similarly situated party" standard, La Botz's complaint is now moot, and the Court lacks jurisdiction to hear his claims.

---

[2] Despite Plaintiff's contentions, a presidential run is immaterial given that there is no evidence in the record that the ONO has ever sponsored, nor ever will sponsor, a presidential debate. In fact, the FEC has pointed out that the Commission on Presidential Debates has sponsored every multi-party presidential debate since 1988. *See* Commission on Presidential Debates, http://www.debates.org/ (2012).

[3] With respect to plaintiff's broad argument that the FEC's nationwide policy may be used against him wherever in the country he decided to run for federal office, Pl.'s Opp'n Mot. 17, he is misguided in his reasoning. Here, the plaintiff challenged the ONO's alleged violation of the FECA, *see* AR013, and thus, to meet the second prong of the capable-of-repetition test (and similarly, the redressability prong of the standing test), he must show that he will be subjected to the *ONO's* alleged unfair debate practices again in the future if the FEC fails to enforce its regulations.

13

### C. Even if the Court Had Jurisdiction, It Would Still Dismiss this Case on the Merits Given the Commission's Broad Prosecutorial Discretion.

The FEC next argues that its dismissal of La Botz's administrative complaint was a reasonable exercise of its prosecutorial discretion. *See* Def.'s Mot. 16–22. In response, La Botz does not contest or dispute the FEC's prosecutorial discretion rationale. *See* Pl.'s Opp'n Mot. 14 ("Plaintiff, for its part, does not challenge the FEC's prosecutorial discretion."). Instead, La Botz challenges three broad policy statements in the Commission's Factual and Legal Analysis in MUR 6383R that he contends the FEC adopted as national policies. *See id.* at 22–30.[4] The Court again agrees with the FEC.

---

[4] Though La Botz argues that the FEC adopted three "national policies" in dismissing his complaint, the Court struggles to find where, exactly, the FEC did so. In its Legal Analysis in MUR 6383R, the FEC stated that "[t]he ONO's stated debate selection criteria of first ensuring the eligibility of the candidates and then paring down the field of candidates to the two frontrunners based on polling, conversations with political reporters and sources regarding the races, and financial disclosures, were acceptably objective." AR194–95. La Botz claims this "two frontrunner" policy systematically restricts the debates to the two major party candidates in violation of FECA, and thus the FEC's endorsement of this policy is an impermissible interpretation of the Act. *See* Pl.'s Opp'n Mot. 24–26. However, the FEC never implemented or endorsed a "two frontrunner" policy that focuses only on major party status. The Court does not read the FEC's position to be that a debate-staging organization may adopt a "two frontrunner" policy regardless of how much public support the third-place candidate has garnered. Rather, the FEC explained that in these particular circumstances, the third-party candidates were too far-off based on *objective criteria*. *See* AR194–95. Importantly, the FEC recognized that "[m]ajor party status can be a factor considered by a staging organization *so long as it is not the only factor*." AR194 (citing 11 C.F.R. § 110.13(c)) (emphasis added). And moreover, the ONO's now-written policy does not "restrict their debates to two candidates," as La Botz argues. *See* Pl.'s Opp'n Mot. 24. Rather, the ONO requires that one of three requirements be met as evidence of electoral support (in addition to showing at least 10% success in Ohio state polls from March thru September 2012): that the candidate (i) has raised at least $500,000 to support his/her campaign since the formation of his/her campaign committee, (ii) is the nominee of a major party; <u>or</u> (iii) received in excess of 10% of the general election vote in the immediately preceding election for the office of United States Senator. AR155 (emphasis in original). Thus, major party status is only one factor the ONO considers—not *the only* factor considered. A third party candidate who meets one of the other two objective criteria could be selected to participate in the debate.

When reviewing an FEC decision not to prosecute, the standard to be applied is whether the FEC has acted "contrary to law." *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986) (citing 2 U.S.C. § 437g(a)(8)(C)). The FEC's decision is "'contrary to law' if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act . . . or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." *Id.* (citations omitted);[5] *accord Akins v. FEC*, 736 F. Supp. 2d 9, 16–17 (D.D.C. 2010). The arbitrary, capricious, or abuse of discretion standard is "an extremely deferential standard which requires affirmance if a rational basis for the agency's decision is shown." *Orloski*, 795 F.2d at 167 (internal quotation marks and citations omitted).

The prosecutorial discretion afforded to the FEC is "considerable." *Nader*, 823 F. Supp. 2d at 65 ("The FEC has broad discretionary power in determining whether to investigate a claim, and its decisions to dismiss complaints are entitled to great deference as well, as long as it supplies reasonable grounds.") (citations omitted). An agency decision not to pursue a potential violation involves a complicated balancing of factors which are appropriately within its expertise, including whether agency resources are better spent elsewhere, whether its action would result in success, and whether there are sufficient resources to undertake the action at all.

---

[5] La Botz argues that the FEC could use its prosecutorial discretion to shield a staging organization's "race is allowed" policy from being challenged in district court. *See* Pl.'s Opp'n Mot. 14. The Court finds this analogy inapt. Though the FEC's prosecutorial discretion is "considerable," *see Nader v. FEC*, 823 F. Supp. 2d 53, 65 (D.D.C. 2011), its decision must also not be contrary to law, as set forth above. *See Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986). Courts have already determined that, generally, factors such as polling data and financial support are objective, and represent a permissible interpretation of FECA. *See Buchanan v. FEC*, 112 F. Supp. 2d 58, 74 (D.D.C. 2000); *La Botz*, 889 F. Supp. 2d at 63–64. And as the FEC has already recognized, "the revised [FECA staging organization] rules are not intended to permit the use of discriminatory criteria such as race, creed, color, religion, sex or national origin." *See* Corporate and Labor Organization Activity, 60 Fed. Reg. 64,260-01, 64,262 (Dec. 14, 1995). Thus, the Plaintiff's hypothetical would likely not survive an arbitrary and capricious challenge, because any criteria based on race would likely not constitute a reasonable interpretation of FECA, and would thus be contrary to law.

*See Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Absent a clear showing of abuse of discretion, "it is not [the court's] place to direct the [FEC] how to expend its resources, and it is certainly not the plaintiffs'." *Akins v. FEC*, 736 F. Supp. 2d 9, 22 (D.D.C. 2010). Finally, an agency's decision not to pursue a particular claim is "a decision generally committed to an agency's absolute discretion." *Heckler*, 470 U.S. at 831.

Here, La Botz fails to meet the substantial burden of showing that the Commission's dismissal of his complaint under its prosecutorial discretion was "contrary to law" or an abuse of discretion. On remand, the Commission determined that there was insufficient evidence in the record to conclusively establish whether the ONO had in fact employed pre-existing objective criteria in selecting debate participants. AR195. The Commission then noted that ascertaining precisely the "nature and timing of the criteria employed by the ONO would require an extensive examination of the ONO's debate planning process." AR197. Additionally, it determined that further investigation would require a labor intensive review of the ONO's internal communications, including those of all eight constituent media entities. *Id*. Finally, given that only a single item in the record supported La Botz's allegation,[6] the Commission concluded his

---

[6] La Botz argues that the FEC incorrectly concluded that oral evidence is sufficient to prove that the ONO employed pre-existing objective criteria in advance of the 2010 debates. *See* Pl.'s Opp'n Mot. 27–28. La Botz seems to rely on *La Botz I* for support that contemporaneous evidence is required, in addition to oral evidence. But *La Botz I* never made that conclusion—*La Botz I* concluded that the FEC's determination was not based on substantial evidence because the contemporaneous evidence *contradicted* the other evidence without appropriate examination by the FEC. *La Botz*, 889 F. Supp. 2d at 62. Importantly, *La Botz I* acknowledged that "while the FEC regulations do not specifically require debate staging organizations to reduce their criteria to writing, it is strongly encouraged." *Id.* (citing Corporate and Labor Organization Activity; Express Advocacy and Coordination with Candidates, 60 Fed. Reg. 64,260-01, 64,262 (Dec. 14, 1995), *available at* 1995 WL 735941). And in this case, the FEC never made that precise conclusion; rather, the FEC concluded that "undocumented affirmative statements submitted by or on behalf of respondents will suffice *so long as* the evidence shows that the criteria were used in a manner consistent with the media organization's affirmative statements." AR195 (emphasis added). Because the FEC found that the ONO had

claim did not "warrant undertaking such a resource-intensive review and would be an inefficient use of the Commission's limited resources."[7] *Id*.

After conducting a thorough review of the evidence in the record, the Commission ultimately decided its resources would be better utilized elsewhere, a decision entirely within its discretion. *See Stark v. FEC*, 683 F. Supp. 836, 840 (D.D.C. 1988) (concluding it is "surely committed to the [FEC's] discretion to determine where and when to commit its investigative resources"); *see also La Botz*, 889 F. Supp. 2d at 63 n.6 (noting the FEC's decision to dismiss La Botz's complaint could have been justified under its prosecutorial discretion). The FEC is not required to pursue every potential violation of FECA, *see Heckler*, 470 U.S. at 831, but rather may appropriately dismiss matters that do not "merit further use of Commission resources, due to…vague[] or weak[] evidence." *FEC Statement of Policy Regarding Commission Action in Matters at the Initial Stage of the Enforcement Process*, 72 Fed. Reg. 12,545, 12,546 (Mar. 16, 2007). Here, given the conflicting evidence in the record, in order for the FEC to conclude that it had reason to believe that the ONO had committed a violation of FECA, it would have been required to investigate further. However, as this Court previously noted in *La Botz I*, it seems

---

made inconsistent statements, it decided that "[t]o conclusively determine the nature and timing of the criteria employed by the ONO would require an extensive examination of the ONO's debate planning process . . . [which] would be an inefficient use of the Commission's limited resources." AR197. Thus, La Botz's argument that the FEC improperly concluded that oral evidence is sufficient (1) lacks any legal support, and (2) lacks a basis in the record.
  [7] La Botz argues that the FEC impermissibly relieved the ONO of its evidentiary burden. *See* Pl.'s Opp'n Mot. 29. This argument lacks merit for two reasons. First, La Botz confuses the steps: the FEC was deciding whether to investigate further; at that point, the ONO had *no* burden of proof. Second, neither the FECA, nor FEC regulations impose a burden of production on debate staging organizations. And even if the FEC had required the ONO to surrender all of its materials and documentation, the FEC would still have had to expend countless resources and man-hours reviewing and analyzing these items—which is one of the reasons the FEC declined to exercise its prosecutorial discretion, as set forth above, in the first instance. Thus, for the same reasons discussed above, it appears that a dismissal on grounds of prosecutorial discretion would still have been reasonable and not an abuse of discretion.

very unlikely that La Botz would have benefitted from the ONO's use of any objective criteria, given that he received less than 1% support in previous polls. 889 F. Supp. 2d at 63 n.6; *see also* AR079 (showing that in each of the ten polls relied upon by the ONO, no third party candidate, including La Botz had received more than 1% of the votes). Thus, it seems entirely reasonable for the FEC to opt not to pursue La Botz's claim, but rather to expend its resources on more salient and potentially fruitful matters. Therefore, the FEC's dismissal of La Botz's administrative complaint was within its prosecutorial discretion and not contrary to law or an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the FEC's motion to dismiss both for lack of subject matter jurisdiction and for failure to state a claim. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 25, 2014                              RUDOLPH CONTRERAS
                                                  United States District Judge